IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACKSON NATIONAL LIFE INSURANCE CO., | ) ) ) | No. 16-cv-2624 |
| Plaintiff, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| TERESA HARDIN, JAMES KOCH, JR., and JEFFREY KOCH, | ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM ORDER AND OPINION

Plaintiff Jackson National Life Insurance Co. ("Jackson") brings this interpleader action against Defendants Teresa Hardin ("Teresa"), James Koch, Jr. ("James"), and Jeffrey Koch ("Jeffrey") (collectively, "Defendants") for a declaration of its rights under an annuity policy that it issued to Defendants' now-deceased mother, Judith Koch ("Judith"). Currently before the Court is James' motion [13] to transfer this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). Teresa and Jeffrey oppose the motion. See [20]. Also before the Court is Jackson's motion [15] to deposit funds and to be dismissed from the case. Jackson's motion is unopposed except that James opposes Jackson's request that its attorneys' fees and costs in the amount of $4,424 be deducted from the annuity funds that it seeks to deposit with the Clerk of Court. For the reasons explained below, James' motion [13] to transfer is denied and Jackson's motion [15] to deposit funds and be dismissed from the case is granted in part and denied in part. The Court authorizes Jackson to deposit Judith's annuity death benefit in the amount of $73,250.78 into the registry maintained by the Clerk of Court. Upon receipt of the deposit, the Court shall enter an order discharging Jackson of liability under the annuity and dismissing Jackson from the case.

Jackson's request to deduct its attorney fees and costs from the annuity death benefit is denied without prejudice. This case is set for further status on July 20, 2016 at 9:00 a.m.

## I. Background[1]

Jackson is a Michigan corporation with its principal place of business in Michigan. Jackson transacts insurance business in Illinois. Teresa is a resident of Indiana, James is a resident of Arizona, and Jeffrey is a resident of Illinois. Their mother, Judith, lived in Burbank, Illinois until around March 2015. On March 27, 2015, Jackson issued an annuity to Judith in Illinois. Judith was the owner of and insured under the annuity. Judith named Teresa (34%), James (33%) and Jeffrey (33%) as beneficiaries of the annuity in the event of her death.

In the following months, Judith's health deteriorated due to cirrhosis of the liver and Alzheimer's, and arrangements were made for her to move to Arizona. On December 1, 2015, Jackson processed an annuity beneficiary change request, purportedly submitted by Judith, which listed James as the sole (100%) beneficiary of the annuity in the event of Judith's death. Around this time, Judith's health deteriorated rapidly and she was placed in hospice care. On December 5, 2015, James sent a text message to Judith and Jeffrey telling them that Judith was very weak and sleeping 23 to 24 hours a day. On December 14, 2015, Judith passed away in Arizona.

Subsequently, Teresa contacted Jackson and claimed that the beneficiary change request had been fraudulently submitted by James and/or that James had exerted undue influence upon Judith. On February 26, 2016, Jackson filed a complaint for interpleader against Defendants, requesting that the Court order Defendants to litigate all matters relative to the disputed benefits

---

[1] For purposes of the instant motion, the Court accepts as true the allegations set forth in Jackson's complaint. The Court takes additional facts from the parties' briefs on the motion to transfer and the motion to tender annuity funds and be dismissed from the case. See [13], [15], [17], [18], [19].

2

under the annuity among themselves and dismiss and discharge Jackson from all further proceedings.

On March 21, 2016, James filed a motion [13] to transfer the case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). Teresa and Jeffrey oppose the motion; Jackson takes no position on it. On March 23, 2016, Jackson filed a motion [15] to tender annuity funds to Court and to be dismissed from the case. James opposes the motion only to the extent that it requests that Jackson be paid its attorney fees and costs out of the funds deposited with the Clerk of Court.

## II. Analysis

### A. Motion to Transfer [13]

James moves pursuant to 28 U.S.C. § 1404(a) to transfer this matter from the Northern District of Illinois, Eastern Division (in Chicago), to the District of Arizona (in Phoenix). Teresa and Jeffrey oppose the motion and Jackson takes no position on it. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision authorizes the Court to transfer matters based on a "case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). Therefore, the Seventh Circuit "grant[s] a substantial degree of deference to the district court in deciding whether transfer is appropriate." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010). The Court may transfer a case under section 1404(a) when: "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the

3

transfer will serve the interests of justice." *Hanover Ins. Co. v. N. Bldg.. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012). The Court will consider these factors in turn.

### 1. Is venue proper in the transferor and transferee districts?

The Court concludes that venue is proper in this District under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1397 (which applies to interpleader actions) because one of the Defendants, Jeffrey, resides in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action also occurred in the District. Judith entered into the annuity policy in Illinois and her beneficiary change request was confirmed in Illinois.

The Court concludes that venue would also be proper in the District of Arizona, because it is a district "where [the action] might have been brought." 28 U.S.C. § 1404(a). Defendant James resides within the District of Arizona and a substantial part of the events or omissions giving rise to the claim—particularly Judith's change to the beneficiaries of her annuity policy shortly before her death—occurred within the District of Arizona. 28 U.S.C. §§ 1391(b)(2), 1397.

### 2. Will transfer serve the convenience of the parties and witnesses?

"In evaluating the convenience of the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Hanover Ins. Co. v. N. Bldg.. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012) (citing *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.,* 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002)). As the movant, James "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more

convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Considering the five factors together, the Court concludes that James has not met his burden.

First, the "plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum." *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 960-61 (N.D. Ill. 2006). In this case, the Court gives some, but not much, deference to Jackson's choice of forum because Jackson has not weighed in on which forum it prefers, and instead seeks to be dismissed from the case as soon as possible.

Second, both this District and the District of Arizona are alleged to be situses of material events, so this factor is neutral. The central dispute in this case is the validity of the change in beneficiary purportedly submitted by Judith on December 1, 2015. The annuity policy was executed in Illinois and, about ten months later, changed in Arizona. The parties' briefs indicate that Judith's health was deteriorating before she left Illinois and deteriorated further in Arizona. Disputes are likely to arise concerning whether James procured the change through undue influence or fraud and whether Judith had sufficient mental capacity to authorize the change.

The parties do not specifically address the third factor, the relative ease of access to sources of proof, so the Court will skip to the fourth factor, the convenience of the witnesses. James argues that the most important witnesses in this case are the doctors, medical providers, and other individuals in Arizona who interacted with Judith around the time that her annuity beneficiary designations were changed. They may testify about her mental capacity and her likelihood to be subject to undue influence. Teresa and Jeffrey respond that there are other important witnesses located in Illinois and therefore James' motion simply seeks to transfer the inconvenience from him to them. Judith was treated by doctors and interacted with Jackson's employees in the Chicago area. These individuals may also offer material testimony concerning

5

Judith's mental capacity and susceptibility to undue influence. At this point, the Court does not have sufficient information about Judith's health and how and when it deteriorated to determine which witnesses' testimony may be most important; for instance witnesses in Illinois might testify that Judith's health had deteriorated significantly before she moved to Arizona.

James also argues that Arizona would be a more convenient forum for witnesses because Judith's last will and testament will be probated in Arizona state court and the probate proceeding may involve similar issues concerning Judith's mental capacity shortly before her death. Judith and Jeffrey argue, on the other hand, that Illinois is a more convenient forum for witnesses because "since [James] filed his motion to transfer, another matter with almost identical facts and witnesses was filed by Pruco Life Insurance Company in the Northern District of Illinois." [20] at 6 (citing Case No. 16-cv-3809). Since there are related proceedings pending both in this District and in the District of Arizona, neither forum is clearly more convenient for the witnesses as a whole. While the Court could choose to transfer both this case and Case No. 16-cv-3809 to the District of Arizona, the Illinois witnesses would still need to travel and would be beyond the subpoena power of the Court. In short, the Court cannot say based on the evidence presented to it that the District of Arizona would be more convenient for the witnesses. Regardless of the forum, the parties will need to work with each other and the witnesses to keep costs in check and secure the presence of necessary witnesses at trial.

Finally, the Court must consider the convenience of the parties. The District of Arizona is more convenient for James, who lives in that district. But this District is more convenient for the other two Defendants, who live in Chicago and Indiana. This factor weighs against transfer.

Considering all five factors by reference to the particular circumstances of the case, the Court concludes that the District of Arizona is not clearly a more convenient forum than the

Northern District of Illinois. See *Coffey*, 796 F.2d at 219-20.

### 3. Will transfer serve the interests of justice?

"In considering the interests of justice, courts weigh additional factors, including: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue." *Hanover Ins. Co.*, 891 F. Supp. 2d at 1025.

Considering the factors in turn: First, the case may or may not proceed more quickly to trial in District of Arizona. While judges in this District have a higher average number of cases than judges in the District of Arizona, James does not provide statistics on the average time from filing to trial in the two jurisdictions. Second, James asserts that this is a diversity action in which Arizona law will be applied, but he provides no supporting citations or analysis. The Court cannot conclude on the basis of the briefing to date that Arizona law applies to the parties' dispute. But even assuming that it does, this Court is capable of applying Arizona law to the facts before it. Third and fourth, both forums have an interest in and relation to the controversy: Judith lived in both places close to the time of her death, the annuity was signed in Illinois and shortly after modified in Arizona, and at least one Defendant lives in each district. For these reasons, the Court concludes that the interests of justice do not strongly favor one forum over the other.

The Court concludes that this matter should not be transferred to the District of Arizona because: although (1) venue is proper in the Northern District of Illinois; and (2) venue would also be proper in the District of Arizona; (3) transfer would not, on the whole, serve the convenience of the parties and witnesses, who are located in and near both districts; and (4) transfer is not necessary to serve the interests of justice because this controversy has a

connection to both this District and the District of Arizona. Therefore, the Court denies James' motion [5] to transfer venue.

B.  **Jackson's Motion to Deposit Funds and Be Dismissed From the Case**

Jackson moves for an order authorizing it to tender the relevant annuity funds to the registry of the Court and to be dismissed from the case. Jackson also requests authorization to deduct its reasonable attorney fees and costs, in the total amount of $4,424, from the funds deposited with the Court. Teresa and Jeffrey do not oppose Jackson's motion. James opposes the motion only to the extent that it requests the award of Jackson's attorney fees and costs.

"Interpleader is an equitable procedure used when the stakeholder is in danger of exposure to double liability or the vexation of litigating conflicting claims." *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008). "An interpleader action permits a 'stakeholder who has no claim to the money in the accounts and is willing to release it to the rightful claimant, to put the money * * * in dispute into court, *withdraw from the proceedings*, and leave the claimants to litigate between themselves the ownership of the fund in court.'" *Metro Life Ins. Co. v. Johnson*, 2012 WL 2192283, at *3 (N.D. Ill. June 13, 2012) (quoting *Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 487 (7th Cir. 1994)) (emphasis in *Metro Life*). "'The result is that the competing claimants are left to litigate between themselves, while the stakeholder is discharged from any further liability with respect to the subject of the dispute.'" *Metro Life*, 2012 WL 2192283 at *3 (quoting *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009)).

The Court concludes that Jackson's interpleader action was properly filed because the Defendants' dispute concerning the validity of Judith's December 1, 2015 annuity beneficiary change request has exposed Jackson to the vexation of litigating Defendants' conflicting claims to the annuity benefits. The Court also concludes that Jackson is entitled to deposit the disputed

funds with the Court and to be dismissed from the case. Jackson admits that it has no claim to the annuity benefits and requests leave to pay the money in dispute into Court so that it may withdraw from the case. Defendants raise no opposition to Jackson's proposal to deposit the disputed funds and withdraw from the case.

The only issue in dispute is whether Jackson is entitled to deduct its attorney fees and costs from the amount it deposits with the Court. While he does not question the reasonableness of Jackson's fees and costs—which are supported by an affidavit and billing records—James argues that awarding fees and costs would be inappropriate because litigating disputes over the proper distribution of policy benefits is part of Jackson's normal course of business as an insurer. Jackson does not specifically address whether resolving such disputes is a regular part of its business, but maintains that the Court has broad discretion to award fees and costs and points to cases where costs and fees were awarded under similar factual circumstances.

In the Seventh Circuit, "a court may award attorneys' fees and costs to a prevailing stakeholder in an interpleader action if the costs are determined to be reasonable and the stakeholder's efforts are not part of its normal course of business." *Aaron*, 550 F.3d at 667 (citing *Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.*, 493 F.2d 76, 79 (7th Cir. 1974); *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965)).[2] Jackson argues that *Aaron*

---

[2] See also *Travelers*, 354 F.2d at 490 (insurers may not, as a matter of course, transfer part of their ordinary cost of doing business to their insureds by bringing action for interpleader whenever minor problem arises in payment of insurance policies, and whether to allow costs and counsel fees is a matter for the sound discretion of the court); *Union Central*, 493 F.2d at 79 ("There may be an allowance of expenses to a plaintiff who has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. A party who has produced or preserved a common fund for the benefit of a group may be reimbursed for expenses of litigation. In the sound and cautiously exercised discretion of the court, and not as a matter of right, attorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate where such litigation, with respect to substantial and material issues, is necessary in order to resolve the meaning and legal effect of ambiguous language used by the settlor in the trust instrument, if an adjudication thereof is essential to a proper administration of the trust, and if, without unnecessary expense or delay, the litigation is conducted in good faith for the primary benefit of

does not "squarely address" whether the plaintiff in an interpleader action must demonstrate that his efforts fall outside his normal course of business to be entitled to attorney fees, because the parties in that case agreed with the district court that this was the applicable standard. [19] at 3 (citing *Midland Nat'l Life Ins. Co. v. Ingersoll*, 2014 7240268, at *3 (E.D. Wis. Dec. 18, 2014)). However, the Court does not read *Aaron* to be equivocal in its statement that fees and costs may be awarded if the "stakeholders efforts are not part of its normal course of business," and the Seventh Circuit affirmed the district court's decision to award fees to Merrill Lynch in part based on the district court's finding that Merrill Lynch's efforts in that case went beyond its normal course of business. 550 F.3d at 667 (district court did not abuse discretion awarding fees to Merrill Lynch, which brought interpleader cross-claim against parties who claimed an interest in Merrill Lynch IRA accounts, where district court determined that Merrill Lynch was a disinterested stakeholder whose efforts were not part of its normal course of business, the case was complex and involved extensive discovery and motions practice in several jurisdictions, and Merrill Lynch did nothing to prolong or complicate the proceedings). *Aaron* also is consistent with earlier Seventh Circuit precedent recognizing that although "[a] court may award reasonable fees in an interpleader action," courts "generally do not award fees" when "the stakeholder's efforts are part of its normal course of business." *Sternitzke v. Pruco Life Ins. Co.*, 64 F. App'x 582, 585 (7th Cir. 2003) (citing *Union Central*, 493 F.2d at 79; *Travelers Indemnity*, 354 F.2d at 490).

Jackson makes no attempt to demonstrate that its efforts to determine the proper beneficiaries of Judith's annuity fell outside its normal course of business. Instead, Jackson

---

the trust as a whole. Though the right to charge counsel fees as costs out of the fund or estate in controversy, in a proper case, is well established, it is recognized that the practice of allowing such fees is subject to great abuse and should be exercised with the most jealous caution in regard to the rights of litigants to avoid bringing the administration of justice into reproach." (internal quotation marks and citations omitted)).

argues that the weight of authority supports granting it fees and costs even in the absence of such proof. Jackson cites for this proposition *Minnesota Life Ins. Co. v. Kingkade*, 2014 WL 293812, at *3 (N.D. Ind. Jan. 27, 2014), and the cases cited therein. However, *Kingkade* recognizes the general rule stated in *Aaron* that "'a court may award attorneys' fees and costs to a prevailing stakeholder in an interpleader action if the costs are determined to be reasonable *and the stakeholders efforts are not part of its normal course of business*,'" and declined to award fees to Minnesota Life without a final accounting of its fees and proof that the fees were "nominal and of little consequence" to the deposited funds. *Id.* at *2-3 (emphasis added). The in-Circuit district court cases cited by *Kingkade* either recognize the same rule as *Aaron*,[3] or authorize the award of attorney fees without discussing the applicable standard.[4]

---

[3] See *Sternitzke*, 64 F. App'x at 585 (district court did not abuse its discretion by awarding reasonable attorney fees to life insurer which instituted and participated in an interpleader action concerning the disposition of insurance proceeds, where district court found that insurer engaged in involved and protracted efforts to locate and serve 21 interested parties and that insurer's "actions were not in the normal course of business"); *Lutheran Bhd. v. Comyne*, 216 F. Supp. 2d 859, 863 (E.D. Wisc. 2002) (recognizing that "some courts have also refused to allow fee deduction where the costs of initiating the interpleader action are properly considered part of the stakeholder's cost of doing business" and determining, in case involving disputed claims to an annuity death benefit by two alleged beneficiaries, that annuity issuer that brought interpleader action was entitled to attorney fees where alleged beneficiaries did not argue "that a dispute such as the instant one is properly considered a cost of [the issuer] doing business"); *John Deere Deferred Sav. Plan for Wage Employees v. Propst*, 2007 WL 4594681, at *8 (E.D. Wis. Dec. 28, 2007) (recognizing that "some courts have also refused to allow fee deduction where the costs of initiating the interpleader action are properly considered part of the stakeholder's cost of doing business"; finding that saving plans that initiated interpleader action to determine who was entitled to proceeds of decedent's 401(k) account were entitled to $15,000 in attorney fees and costs, not the $68,000 they requested, in part because the plans inappropriately sought reimbursement for fees they incurred "in performance of their fiduciary duties as plan administrators").

[4] *Hartford Life & Acc. Ins. Co. v. Sabol*, 2010 WL 519725, at *3 (E.D. Wis. Feb. 9, 2010) (awarding partial attorney fees to insurer that brought interpleader suit to determine correct recipient of life insurance policy, where no party objected to fee request; authorizing an award of fees "related to researching and filing the interpleader action and interacting with the interpleader defendants," which directly contributed to the ultimate resolution of the underlying dispute, but disallowing request for fees related to preparing and reviewing insurer's motion to dismiss and to deposit funds in court, which were "matters of convenience" for the insurer); *Metro Life Ins. Co. v. Ramos*, 2006 WL 2545984, at *2 (C.D. Ill. Aug. 31, 2006) (confirming magistrate judge's recommendation to award interpleader plaintiff attorney fees of $5,239 out of $53,801 deposited in the court's registry, without discussing the legal standards applicable to the award of fees).

Jackson also does not address *Minnesota Mut. Life Ins. Co. v. Gustafson*, 415 F. Supp. 615 (N.D. Ill. 1976), which held that "when an insurance company brings an interpleader action concerning disputed claims of a kind that usually arise in the course of its business, fees should not be granted to its counsel." *Id.* at 619. The court explained that in the absence of extraordinary circumstances, "[t]he insurance company, not the beneficiaries of the policy, should pay the costs of relieving it of its liability to the proper claimants," because "[t]he claimants will have to pay the costs of their own representation and should not, in addition, bear those of the insurer." *Id.*

*Gustafson* is consistent with the Eastern District of Wisconsin's recent decision in *Ingersoll*, 2014 WL 7240268, which involved facts quite similar to this case. Midland, an insurer, issued an annuity policy to Delores Behm. *Id.* at *1. Delores' family trust was named the sole beneficiary. *Id.* Shortly before Delores died, she executed an amendment to her trust to change its beneficiaries. *Id.* Following Delores' death, a dispute arose between the original contingent beneficiaries of the trust and the new named beneficiaries of the trust concerning Delores' mental capacity to execute the amendment and whether undue influence was exerted over Delores. *Id.* Midland brought an interplead action against the potential beneficiaries of the trust. *Id.* The court denied Midland's request for an award of $51,335 in attorney fees from the funds Midland had deposited with the court. *Id.* at *4. The court opined that *Aaron* did not "squarely address[] whether district courts should apply the ordinary-course-of-business exception," because the parties it that case "had agreed" that this was the appropriate standard to apply. *Id.* at *3. Nonetheless, the court concluded, application of the exception was appropriate under the facts before it. The court explained:

> I see no reason to award fees to an insurance company that files an interpleader action for the purpose of resolving a dispute over the proper distribution of policy

benefits. [A]n insurance company must expect that such disputes will arise from time to time and must accept the risk that it will sometimes be subject to multiple and conflicting claims to policy benefits. Becoming embroiled in such disputes is thus an ordinary and expected part of the insurance business, and it is not inequitable to require the insurer to bear the attorneys' fees it incurs in the course of exiting such disputes. It is true that when there is a bona fide dispute over the funds, the insurance company could be viewed as doing the claimants a service by filing an interpleader action that will preserve the stake and prevent multiple suits. However, the insurance company also benefits from the interpleader because it will be relieved of the risk of distributing the policy benefits to the wrong claimant and the risk of becoming the target of multiple suits. Since all parties to the action benefit, all should bear their own fees, as is the norm in American litigation. While the Wright treatise points out that all interpleader plaintiffs, not just insurance companies, benefit from being relieved of multiple liability, it does not follow that insurance companies should be treated the same as other interpleader plaintiffs. Insurance companies are different because, as noted, they are not really "innocent" stakeholders—they entered the insurance business with knowledge that from time to time they will become involved in disputes among claimants over who is entitled to policy benefits. The fees they incur in filing these occasional interpleader actions are thus foreseeable expenses that can be, and likely have been, worked into the policy premiums. Thus, unlike a true innocent stakeholder—who through no fault of his own comes into possession of the disputed funds and has no means of being reimbursed for the cost of initiating the interpleader action—an insurance company should not be awarded fees from the stake when the stake consists of policy benefits.

*Id.* at *3.

The Court finds *Ingersoll*'s reasoning to be persuasive and consistent with the Seventh Circuit's decision in *Aaron*. Based on its consideration of the case law and the parties' arguments, the Court concludes that Jackson has not demonstrated that it is entitled to its attorney fees and costs because it does not attempt to demonstrate that the instant dispute is of a kind that does not usually arise in the course of its business.

In sum, the Court grants in part and denies in part Jackson's motion to tender annuity funds to the Court and to be dismissed from the case. The Court concludes that Jackson is entitled and authorized to deposit the annuity death benefit in the amount of $73,250.78 into the registry maintained by the Clerk of Court. Jackson is also entitled to be dismissed from the case and discharged of all liability under the annuity. However, Jackson has not demonstrated that it

is entitled to an award of attorneys' fees and costs and therefore is not authorized to deduct these fees and costs from the annuity death benefit it deposits with the Court.

### III. Conclusion

For these reasons, James' motion [13] to transfer is denied and Jackson's motion [15] to deposit funds and be dismissed from the case is granted in part and denied in part. The Court authorizes Jackson to deposit Judith's annuity death benefit in the amount of $73,250.78 into the registry maintained by the Clerk of Court. Upon receipt of the deposit, the Court shall enter an order discharging Jackson of liability under the annuity and dismissing Jackson from the case. Jackson's request to deduct its attorney fees and costs from the annuity death benefit is denied without prejudice. Jackson may renew its request if it believes in good faith that it can demonstrate that its fees and costs are "reasonable" and its efforts were "not part of its normal course of business." *Aaron*, 530 F.3d at 667. This case is set for further status on July 20, 2016 at 9:00 a.m.

Dated: June 28, 2016

                                                                                          _____
                                                                                          Robert M. Dow, Jr.
                                                                                          United States District Judge